UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MIGUEL ANGEL MATIAS-GONZALEZ, | |
| Petitioner, | Case No. 2:26-cv-00326-RFB-MDC |
| v. | **ORDER GRANTING PRELIMINARY INJUNCTION** |
| KRISTI NOEM, *et al.*, | |
| Respondents. | |

Before the Court is Petitioner Miguel Angel Matias-Gonzalez's motion for preliminary injunction relief (ECF No. 2). Through it, he challenges the lawfulness of his ongoing detention at the Nevada Southern Detention Center ("NSDC") in Pahrump, Nevada, at the hands of Federal Respondents. On February 10, 2026, the Court ordered Respondents to explain why a preliminary injunction should not be granted by February 13, 2026. See ECF No. 4 (order to show cause). Federal Respondents filed their response on February 13, 2026, and counsel for Respondent Mattos filed a response that same day, asserting "no position" on the instant matter. See ECF Nos. 7, 8. Counsel for Respondent Mattos filed a response on February 3, 2026, asserting "no position" on the instant matter. See ECF No. 7. For the following reasons, the Court grants the Motion and orders Respondents to immediately release Petitioner pursuant to the bond conditions set forth by the immigration judge ("IJ") in the alternative, at January 16, 2026 bond hearing.

As a preliminary matter, the Court makes the following findings of fact based on Petitioner's undisputed factual allegations and the evidence the Parties supply. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (quoting Whitten v. Tomlinson, 160 U.S. 231, 242 (1895)). Petitioner is a 25-year-old Mexican citizen who has resided in the United States for approximately five years, after entering the country without inspection. See ECF No. 1 at 6. He

1 has since resided continuously in Washington, Utah with his U.S. citizen daughter and fiancée, while working in the tree services and landscaping business in St. George. See id. These loved ones have suffered significant financial and emotional distress for the duration of his detention. See ECF No. 1-5 (Character Statements). Petitioner is currently being held at NSDC and has been in ICE custody since November 11, 2025, when ICE officers arrested him following a traffic stop. See ECF No. 1 at 6. Federal Respondents assert that he is being held in mandatory detention under 8 U.S.C. § 1225(b)(2), meaning he is being held without an opportunity for release on bond. See ECF No. 7 at 2-3. On January 16, 2026, an IJ denied Petitioner bond on jurisdictional grounds pursuant to Hurtado but stated the following alternative finding: "[s]hould any reviewing Court determine that this Court has jurisdiction, or that the respondent must be provided a bond hearing, the Court makes the alternative finding that bond in the amount of $1,500 is appropriate as this respondent has no criminal history and is not a flight risk." ECF No. 1-1.

The Court has previously found in Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025) that similarly situated petitioners who are long-term U.S. residents arrested in the interior and detained without the opportunity for release on bond, were detained in violation of the INA and due process. 2025 WL 3205356, at *10-26 (D Nev. Nov. 17, 2025). The Court incorporates by reference and adopts those same legal conclusions and findings here.

In addition, the Court has already found it habeas jurisdiction to review Petitioner's challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252 do not apply; the Court fully incorporates by references its prior findings on this point. See Escobar Salgado, 2025 WL 3205356, at *8-10; Hernandez Duran v. Bernacke, No. 2:25-cv-2105-RFB-EJY, 2025 WL 3237451, at *4 (D. Nev. Nov. 19, 2025); Posada v. Noem, No. 2:26-cv-00050-RFB-BNW, 2026 WL 194715, at *2-3 (D. Nev. Jan. 26, 2026). The Court also fully incorporates by reference its prior finding that administrative exhaustion is excused as futile due to the BIA's decision in Hurtado. Jacobo Ramirez v. Noem, No 2:25-cv-02136-RFB-MDC, 2025 WL 3270137, at *5-6 (D. Nev. Nov. 24, 2025).

The Court finds that Petitioner has satisfied the Winter factors and is therefore entitled to

1  a preliminary injunction ordering immediate release pursuant to 8 U.S.C. § 1226(a). Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (setting forth factors for preliminary injunction). To obtain a preliminary injunction, a plaintiff must establish four elements: (1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction. Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. at 22).

The Court finds Petitioner has established a likelihood of success on the merits of his statutory and due process challenges to his continued detention for the same reasons set forth in Escobar Salgado regarding Petitioner Escobar Salgado. First, in regard to the INA challenge, Respondents assert that § 1225(b)(2) applies to Petitioner and mandates his detention without opportunity for release on bond. Petitioner argues Respondents' interpretation of the statutory scheme of §§ 1225 and 1226 is erroneous, and that he, as a long-time resident arrested in the interior, is subject to § 1226(a). This Court agrees with Petitioner and incorporates by reference its holding and findings in Escobar Salgado. 2025 WL 3205356, at *10-22. Further, the Court finds Petitioner has established a likelihood of success on the merits of his procedural and substantive due process challenges to his prolonged detention without opportunity for release on bond, particularly given the IJ's finding that Petitioner is neither dangerous nor a flight risk. The procedural due process factors under Mathews v. Eldridge weigh heavily in favor of Petitioner because (1) the private interest affected is the fundamental liberty interest in being free from imprisonment; (2) the risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner, particularly where there is an IJ finding that Petitioner does not present a flight risk or risk of dangerousness; (3) the Government's interest in enforcing immigration laws is served by an individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures, *and* the government has no interest in the unjustified deprivation of a person's liberty. See Mathews v. Eldridge, 424 U.S. 319,

334-35 (1976); see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention under 8 U.S.C. § 1226(a)). Finally, because Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of his physical liberty, this Court finds that Petitioner is currently detained in violation of his substantive due process rights. See Escobar Salgado, 2025 WL 3205356, at *25.

Additionally, it follows inexorably from the Court's determination that Petitioner will continue to be deprived of his physical liberty unconstitutionally in the absence of an injunction that Petitioner has met his burden to show immediate and irreparable harm. See Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). Likewise, the minimal, if not nonexistent, burden on the government by adhering to, and respecting the findings thereof, an established bond hearing process, as compared to the preventable human suffering, *e.g.*, financial and emotional burdens on both Petitioner and his family, in addition to the fundamental harm of arbitrary detention without meaningful due process, demonstrates that the balance of the equities and public interest tip sharply in Petitioner's favor. Id. at 995-96 ("the public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because of . . . likely unconstitutional process.").

Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" Id. (citation omitted). The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas, 391 U.S. at 238. "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall ... dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

The Court finds that the specific harm suffered by Petitioner—prolonged detention despite an IJ finding that his continued detention is unwarranted based on a lack of flight risk and dangerousness—is remedied by ordering his immediate release and enjoining Respondents from

preventing his release on the basis that he is detained under § 1225(b)(2).

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation modified) (quoting Jorgensen, 320 F.3d at 919). Respondents have not argued that releasing Petitioner will be costly. Therefore, the Court declines to impose bond beyond the amount imposed by the IJ in the January 16, 2026, order.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Motion for a Preliminary Injunction (ECF No. 2) is **GRANTED.**

Respondents are **ORDERED** to release Petitioner from custody by **4:00 p.m. on February 19, 2026.** Petitioner shall be subject to the bond and other conditions imposed by the IJ.

**IT IS FURTHER ORDERED** that Respondents are **ENJOINED** from denying Petitioner's release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). Thus, in the event that bond is granted, the Court **ENJOINS** Respondents from invoking the automatic stay to continue Petitioner's detention, as the Court has already found that the automatic stay is unconstitutional. The Court incorporates that finding by reference here. See Herrera v. Knight, 798 F. Supp. 3d 1184 (D. Nev. 2025).

The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond, and, therefore, the Court **FURTHER ORDERS** that Petitioner be afforded until **March 19, 2026**, to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that the parties shall file a joint notice of compliance with this Order by **February 20, 2026**.

**IT IS FURTHER ORDERED** that on or before **March 9, 2026**, the Parties shall file a

stipulated proposed scheduling order for full briefing on the merits of the petition for a writ of habeas corpus (ECF No. 1).

DATED: February 18, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**